<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SEAN G. MASON, | : : : | |
| Plaintiff, | : : | Civil Action No. 16-1366 (ES) (MAH) |
| v. | : : | OPINION |
| US BANK, NA AS TRUSTEE OF 2007-AR2, PHELAN, HALLINAN, AND SCHMIEG, P.C., ROSEMARY DIAMOND ESQ, individually, | : : : : : : | |
| Defendants. | : : | |

**SALAS, DISTRICT JUDGE**

*Pro se* Plaintiff Sean G. Mason ("Plaintiff") brings this action against Defendants US Bank, NA as Trustee of 2007-AR2 ("US Bank"),[1] Phelan Hallinan Diamond & Jones P.C., formerly known as Phelan Hallinan & Schmeig P.C. ("PHD&J"), and Rosemary Diamond, Esq., individually.[2] (D.E. No. 1, Complaint ("Compl.")). This matter is before the Court upon Defendants' motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6). (*See* D.E. No. 5). The Court has subject matter jurisdiction pursuant to 15 U.S.C. §

---

[1] The docket does not show that US Bank was served with the Complaint or a summons. (*See* D.E. Nos. 3 & 4). US Bank does not join in the motion to dismiss. (*See* D.E. No. 5, Notice of Motion to Dismiss). For the reasons discussed herein, even if US Bank was properly served, Plaintiff's claims against US Bank would be barred by New Jersey's entire controversy doctrine and res judicata.

[2] In addition to the three named defendants listed in the caption, the Complaint also purports to name PHD&J partners Lawrence T. Phelan, Francis Hallinan, and Daniel G. Schmieg as individual defendants. (*See* Compl. ¶¶ 8-11). The motion to dismiss was filed by PHD&J and these named individual attorneys (*see* D.E. No. 5, Notice of Motion to Dismiss), so the Court refers to these parties as "Defendants." The Court notes Defendants' position that "[a]s of the filing of this Motion to Dismiss, Plaintiff has not properly served Defendants Rosemary Diamond, Lawrence T. Phelan, Francis Hallinan, or Daniel G. Schmieg." (D.E. No. 5, Attorney Certification in Support of Motion to Dismiss ("Yoder Cert.") ¶ 28).

1

1692k(d), 18 U.S.C. § 1964(c), and 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367.  The Court has considered the submissions made in support of and in opposition to Defendants' motion and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b).  For the reasons set forth herein, the Court GRANTS Defendants' motion to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).

**I. Background**

    **A. Procedural History**

Plaintiff is the owner of real property located at 111 Mulberry Street, Unit 1B Newark, NJ 07102. (Compl. ¶ 6).  To obtain ownership of the property, on January 8, 2007, Plaintiff executed a purchase money mortgage (the "Mortgage") from Mortgage Electronic Registration System, Inc. ("MERS"), as a nominee for GreenPoint Mortgage Funding, Inc. ("GreenPoint"), its successors and assigns. (Yoder Cert. ¶ 3).  On May 16, 2008, MERS, as a nominee for GreenPoint, assigned the Mortgage to US Bank.[3] (Yoder Cert. ¶ 4; Pl. Ex. B; Def. Ex. C).

On May 21, 2008, as a result of Plaintiff's default under the terms of the loan, PHD&J initiated a foreclosure proceeding on behalf of US Bank in the Superior Court of New Jersey, Chancery Division, Essex County. (Yoder Cert. ¶ 5; Def. Ex. D).  Notably, the foreclosure complaint acknowledges the 2008 assignment of the Mortgage to US Bank on May 16, 2008 and states "[t]he assignment is in the process of being recorded." (Def. Ex. D ¶ 2(a)).  After Plaintiff failed to respond to the foreclosure complaint, on September 18, 2008, PHD&J filed a request for certification of default. (Yoder Cert. ¶ 6; Def. Ex. E).  On April 28, 2009, MERS, as a nominee for GreenPoint, executed a corrective assignment to US Bank "pursuant to Court inquiry of the

---

[3] This 2008 assignment was signed by Sheetal R. Shah-Jani, Assistant Secretary and Vice President of MERS, and notarized by Thomas Strain, a notary public for the Commonwealth of Pennsylvania. (Compl. ¶ 17; Pl.'s Ex. B; Def. Ex. C).  On June 10, 2008, the assignment was recorded in Assignment Book 12140, page 2816. (Yoder Cert. ¶ 4; Pl. Ex. B; Def. Ex. C).

notarization of the assignment recorded on 06/10/2008 in Book 12140, Page 2816." (Yoder Cert. ¶ 7; Def. Ex. F). The corrective assignment states, "[t]his assignment should hold the effective date of the original assignment of 05/16/2008."[4] (Def. Ex. F). On October 2, 2009, the Chancery Division entered a final judgment of foreclosure in favor of US Bank. (Yoder Cert. ¶ 8; Def. Ex. G).[5]

Before a Sheriff's sale of Plaintiff's property could be effected, Plaintiff filed for bankruptcy under Chapter 7 of the United States Bankruptcy Code on September 21, 2010 and was granted a Chapter 7 discharge on December 23, 2010. (*See* Yoder Cert. ¶¶ 11-12; Def. Ex. J). On May 5, 2014, US Bank filed an assignment of the judgment and writ of execution to GMAC Mortgage, LLC, transferring and assigning right, title, and interest in the October 2, 2009 final judgment to GMAC Mortgage, LLC. (Yoder Cert. ¶ 13; Def. Ex. K). On June 30, 2014, PHD&J, as counsel for US Bank and GMAC Mortgage, LLC, sent Plaintiff a notice of motion for entry of an amended final judgment. (Yoder Cert. ¶ 14; Def. Ex. L). On November 13, 2014, the Chancery Division granted an amended final judgment of foreclosure and writ of execution. (Yoder Cert. ¶ 15; Def. Ex. M).[6]

Thereafter, on March 10, 2016, Plaintiff filed a Complaint alleging violations of the Racketeering Influenced and Corruption Act ("RICO"), 18 U.S.C. § 1962(c),[7] the Fair Debt

---

[4] The corrective assignment was signed by Judith T. Romano, Assistant Vice President and Secretary of MERS, and notarized by Daniel D. Trauztz, a notary public for the Commonwealth of Pennsylvania. (*Id.*). On May 4, 2008, the corrective assignment was recorded in Assignment Book 12191, page 9607. (Yoder Cert. ¶ 7).

[5] Defendants mailed Plaintiff a copy of the final judgment on October 9, 2009. (Yoder Cert. ¶ 9; Def. Ex. H). Plaintiff did not appeal the final judgment. (Yoder Cert. ¶ 10).

[6] On January 2, 2015, Defendants mailed Plaintiff a copy of the amended final judgment. (Yoder Cert. ¶ 16; Def. Ex. N). Plaintiff did not appeal the amended final judgment. (Yoder Cert. ¶ 17).

[7] 18 U.S.C. 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

3

Collection Practices Act ("FDCPA"), 15 U.S.C. 1692a *et seq.*, and the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. § 56:8-1 *et seq*. (Compl. ¶ 1.). On April 28, 2016, Defendants moved to dismiss Plaintiff's Complaint. (D.E. No. 5, Memorandum of Law in Support of Motion to Dismiss Complaint with Prejudice Pursuant to FRCP 12(b)(6) ("Def. Mov. Br.")). On May, 19, 2016, Plaintiff opposed Defendants' motion and moved for partial summary judgment as to liability. (D.E. No. 7, Plaintiff's Reply to Motion to Dismiss the Complaint Pursuant to FRCP 12(b)(6) and Motion for Partial Judgment as to Liability ("Pl. Opp. Br.")). The matter is now ripe for resolution.

### B. The Parties' Arguments

Plaintiff alleges that the original 2008 assignment of the Mortgage from GreenPoint (through MERS as nominee) to US Bank was fraudulent and invalid, and as a result, US Bank lacked standing to institute the foreclosure action against Plaintiff. (*See* Compl. ¶ 21). Plaintiff further alleges that "Defendants have done these things alleged herein to many similarly situated mortgagees in the State of New Jersey and continue to do so, specifically, filing false and misleading documents with the State courts in order to obtain possession of real property . . . ." (*Id.* ¶ 22). In Count I, Plaintiff alleges fraudulent concealment, claiming "the assignment that . . . [Defendants] relied on to obtain a judgment was defective and void . . . since the original assignment was defective and the corrected assignment was filed with a true date of more than 1 year after the original complaint was filed."[8] (*Id.* ¶ 23). In Count II, Plaintiff alleges attempted conversion by Defendants acting upon an assignment they knew to be false in obtaining a judgment

---

[8] Count I also claims that "at the time either assignment was filed the US Bank NA Trust was closed and could not receive any assets such as Plaintiff's subject property. Plaintiff's obligation was unqualified as it was not part of the REMIC pool. The Trust was a 2007 Trust and the Complaint was filed in 2008 in violation of the Pooling and Service Agreements governing this trust." (*Id.* ¶ 23).

4

in the foreclosure action. (*See id.* ¶ 24). Finally, in Count III, Plaintiff alleges that "defendants have committed fraud on the Court by intentionally filing and acting upon documents they know to be false." (*Id.* ¶ 25).

In their motion to dismiss, Defendants request that the Complaint be dismissed *with prejudice* under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (Def. Mov. Br. at 2). Defendants advance two primary arguments: (i) Plaintiff's claims fail to state a cause of action and should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) (*see id.* at 2-5); and (ii) Plaintiff's claims are barred by the New Jersey entire controversy doctrine and should be dismissed for lack of subject matter jurisdiction (*see id.* at 5-7). Specifically, Defendants contend that Plaintiff fails to state a claim for which relief can be granted because (i) the Complaint fails to plead sufficient factual allegations to give rise to a claim for relief (*see id*. at 2-4); (ii) Plaintiff's claims are barred by res judicata based on the state court foreclosure judgments (*see id.* at 4-5); and (iii) "Plaintiff himself lacks standing to challenge any [a]ssignment of [m]ortgage he is not a party thereto" (*see id*. at 5).

Plaintiff's opposition reiterates his claims that Defendants committed fraud by relying on false and misleading documents, namely, the assignments of the Mortgage, in violation of RICO and the FDCPA. (*See* Pl. Opp. Br. at 1-3, 7-9). Rather than addressing the New Jersey entire controversy doctrine or res judicata, Plaintiff's opposition rehashes the standard of review for a motion to dismiss for failure to state a claim and argues that Plaintiff has met the pleading standards. (*See id.* at 4-7). Plaintiff then moves for summary judgment on liability. (*See id*. at 9-11).

**II. Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to set forth "a short and plain statement of the claim showing that a pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard of Rule 8 does not require detailed factual allegations, but it demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[9] In addition, the plaintiff's "short and plain statement of the claim" must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

When a motion to dismiss involves an action for fraud, a plaintiff may not rely merely on conclusory statements, but must instead indicate at the very least who made the material misrepresentation giving rise to the claim and what specific representations were made to comply with Federal Rule of Civil Procedure 9(b). *South Broward Hosp. Dist. v. MedQuist Inc.*, 516 F. Supp. 2d 370, 380 (D.N.J. 2007); *see also Grant v. Turner*, No. 09-2381, 2010 WL 4004719, at *2 (D.N.J. Oct. 12, 2010) (applying heightened pleading standard to federal RICO claim and state-law fraud claims). To satisfy Rule 9(b), a plaintiff "must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." *Lum v. Bank of Am.*, 361 F.3d 217, 223-24 (3d Cir. 2004).

For a complaint to survive dismissal, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal,* 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility

---

[9]  Unless otherwise indicated, all internal citations and quotation marks are omitted, and all emphasis is added.

standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

Additionally, as Plaintiff is *pro se*, the Court must construe Plaintiff's pleadings liberally as potentially giving rise to a claim for relief. *See Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("Our policy of liberally construing *pro se* submissions is driven by the understanding that implicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training."). Furthermore, "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245.

### III. Analysis

#### A. The New Jersey Entire Controversy Doctrine

The Court agrees with Defendants that Plaintiff's claims are barred by the New Jersey entire controversy doctrine.[10] As an initial matter, the Court notes that Defendants incorrectly assert that the entire controversy doctrine would defeat subject matter jurisdiction. *See Rycoline Prod., Inc. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("[A]pplication of the entire controversy doctrine, also an affirmative defense, does not defeat the subject matter jurisdiction of a federal court."). Although Defendants conflate the entire controversy doctrine with a motion to

---

[10] Because the Court finds that this claim-preclusion doctrine bars Plaintiff's claims, the Court need not reach Defendants' additional arguments that the Complaint should be dismissed because it fails to plead sufficient factual allegations and because Plaintiff lacked standing to challenge the assignment as a third party.

dismiss under Federal Rule of Civil Procedure 12(b)(1), the Court may properly consider the entire controversy doctrine as the grounds for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), since the entire controversy bar is apparent on the face of the Complaint. *See id.*

"The Entire Controversy Doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional res judicata principles." *Id.* The doctrine "is an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999). "As an equitable doctrine, its application is flexible, with a case-by-case appreciation for fairness to the parties." *Id.* at 137. The doctrine's purposes are threefold: "(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay." *DiTrolio v. Antiles*, 662 A.2d 494, 502 (App. Div. 1995). The Third Circuit has held that New Jersey's entire controversy doctrine applies to bar claims in a federal court when there was a previous state court action involving the same transaction. *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir. 1991).

The entire controversy doctrine is codified at New Jersey Rule of Court 4:30A, which provides that:

> [n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).

The primary consideration in determining if successive claims are part of the same controversy is whether the claims "arise from related facts or from the same transaction or series of transactions."

*DiTrolio*, 662 A.2d at 502.  It is a "commonality of facts, rather than [a] commonality of issues, parties, or remedies that defines the scope of the controversy."  *Id*. at 504.

The limits of the entire controversy doctrine with respect to foreclosure actions, however, are narrower.  *See Leisure Technology-Northeast, Inc. v. Klingbeil Holding Co*., 349 A.2d 96, 98 (App. Div. 1975).  New Jersey Court Rule 4:64-5 requires that only "germane" counterclaims may be joined in a foreclosure action.  Claims are considered to be germane to a foreclosure action if they "aris[e] out of the mortgage that is the basis of the foreclosure action."  *See Leisure*, 349 A.2d at 98.  Whether an issue is germane to the action should be construed liberally.  *Id.* at 99.

"Courts have considered several types of claims germane to a New Jersey foreclosure action, including those challenging the circumstances surrounding origination of the loan, challenging the validity of the loan itself, and challenging the amount due on the mortgage." *Zebrowski v. Wells Fargo Bank, N.A*., No. 07-5236, 2010 WL 2595237, at *6 (D.N.J. June 21, 2010).  Additionally, federal courts have applied the entire controversy doctrine to bar claims relating to excessive fees in foreclosure actions.  *See, e.g.*, *Coleman v. Chase Home Fin*., *LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 472-73 (3d Cir. 2011); *Oliver v. Am. Home Mortg. Servicing, Inc.*, No. 09-0001, 2009 WL 4129043, at *4 (D.N.J. Nov. 19, 2009); *Venner v. Bank of Am.*, No. 07-4040, 2009 WL 1416043, at *3 (D.N.J. May 19, 2009).  Relevant here, federal courts have applied the doctrine to claims that defendants lacked standing to institute foreclosure actions due to invalid assignments of mortgages.  *See, e.g.*, *Hua v. Mortg*., No. 14-7821, 2015 WL 5722610, at *5-6 (D.N.J. Sept. 29, 2015); *Kimmel v. Phelan Hallinan & Schmieg, PC*, 847 F. Supp. 2d 753, 757, 64-65 (E.D. Pa. 2012); *Dennis v. MERS/Merscorp Mortg. Elec. Registration Sys., Inc*., No. 11-4821, 2011 WL 4905711, at *1-2 (D.N.J. Oct. 13, 2011).

### B. Analysis

The Court finds that Plaintiff's claims regarding the fraudulent and invalid assignments of the Mortgage were germane to the state court foreclosure action. Indeed, the issue of who owned the mortgage—and therefore had standing to file a foreclosure action—is fundamentally intertwined with the foreclosure action. *See, e.g.*, *Hua*, 2015 WL 5722610 at *5-6 ("The thrust of Plaintiff's complaint is that Defendants never accelerated Plaintiff's mortgage, failed to provide proper notice of acceleration, *was*[sic] *not authorized to foreclose because the debt was not validly assigned to them,* and sought unauthorized fees in the foreclosure. In other words, these claims . . . were highly germane to the foreclosure actions in state court."). However liberally the Court construes Plaintiff's claims under RICO, the FDCPA, or the NJCFA, these claims pertain to the validity of the assignment of the Mortgage and therefore necessarily "arise from related facts or the same transaction or a series of transactions." *Fields v. Thompson Printing Co.*, 363 F.3d 259, 265 (3d Cir. 2004); *see also Venner*, 2009 WL 1416043, at *3.

To be sure, the fact that the state court foreclosure judgment was obtained by default does not alter the Court's analysis. *See Dennis* 2011 WL 4905711, at *1-2 (applying the entire controversy doctrine to bar claims by plaintiff who had defaulted in state court foreclosure action); *see also Fraize v. Gov't Nat'l Mortg. Ass'n*, No. 14-7152, 2016 WL 958392, at *9 (D.N.J. Mar. 14, 2016) (barring claims related to mortgage foreclosure under the entire controversy doctrine when plaintiff previously filed a non-contesting answer in state court foreclosure action). Indeed, "[t]he rule in New Jersey is that a default judgment is a valid and final adjudication on the merits and therefore has res judicata effect barring future litigation." *Tagayun v. Citibank, N.A.*, No. 05-4302, 2006 WL 5100512, at *4 (D.N.J. June 9, 2006).

Accordingly, the Court grants Defendants' motion to dismiss because Plaintiff's claims are barred by the entire controversy doctrine.[11]  As a result, the Court denies Plaintiff's motion for summary judgment as moot.  Finally, as amending the Complaint could not overcome the entire controversy doctrine and would be futile, the Court must grant this dismissal *with prejudice*.  See *In re Burlington Coat Factory Sec. Litig*., 114 F.3d 1410, 1434 (3d Cir. 1997).

## IV. Conclusion

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  Plaintiff's Complaint is dismissed in its entirety *with prejudice*.  An appropriate Order accompanies this Opinion.

*s/Esther Salas*
**Esther Salas, U.S.D.J.**

---

[11]  Alternatively, the Court notes that Plaintiff's claims are barred by res judicata. Res judicata will bar a future proceeding where "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Watkins v. Resorts Int'l Hotel & Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991). Here, the final foreclosure judgments are valid, final judgments on the merits. The Defendants in this action were involved in the prior foreclosure action, either as a party to the action or in privity with a party to the action. And all of Plaintiff's claims arise out of the same transaction or occurrence as the claims in the foreclosure action.  Thus, Plaintiff's claims are barred by of res judicata.